Next case call for oral argument is Margarida v. General Motors Acceptance. Counsel? Mr. Clerk, I'd like to say good morning. This case is a Consumer Fraud Act case stated in four counts. Two of the counts allege consumer fraud. The two remaining counts allege a concert of action liability. We got here because a motion judge substituting for the judge assigned to the case dismissed the complaint in a two-line order giving no reasons for the dismissal. The issue is whether it's proper to dismiss a complaint under Section 2619 when there is nothing on the face of the complaint that affirmatively bars the cause of action and where any other matters that are asserted are not substantiated, are supported by an affidavit or by copies, certified copies of depositions that are relied upon, which is a requirement of Supreme Court Rule 191. Justice Fitzgerald recently said that the difference between 615 and 619 is that under 615 you test the sufficiency of the complaint and under 619 you say that there is something outside of the complaint that affirmatively bars the cause of action. That's essentially what this court said through Justice Harrison in, I think, 1985 when he delineated the difference between these two motions. And he said in that case that it's important to have that distinction so that the defendant or the party who's not the moving party knows what he is supposed to meet and can meet it. And the reason that Rule 191 requires that copies of depositions or affidavits be furnished is so that the judge who is considering the motion has an opportunity to examine what was actually said and testified to, not what the lawyer says, not what the lawyer claims was testified to. I wrote down here the Consumer Fraud Act case, or the statute, which makes it unlawful for any unfair practice and not limited to any deception, fraud, false pretense, misrepresentation, or any suppression, concealment, or omission of any material fact with the intent that the consumer rely on the omission or suppression committed in the conduct of a trade or business, regardless of whether the consumer is, in fact, misled, deceived, or sustains damage. Now, this is a suit in tort. It's not a suit in contract, so tort principles, not contract principles, apply. The complaint alleges a deception in that Jennifer was told that she was just helping her husband sign to get a motor vehicle for use in his business. Suppressed and concealed from her was the fact that the automobile dealer and defendant, Margarita, had evolved a plan or plot to use her credit, her Social Security number, her date of birth, her identity, to steal her identity, in other words, to get an approval of credit from GMAC. Pursuant to this plot or plan, they sent from Peoria, Illinois, a salesman named Buzarski who appeared in Jennifer's home one evening around 7 o'clock after her husband had told her that she was just assigned to help him get this automobile, help him sign. And Buzarski was asked by Jennifer, why would I have to sign for his car? Now, Buzarski knew why. He knew that Mr. Margarita had had his credit rejected, and he knew that the credit application had been made without her knowledge to GMAC using her identity, and that it had been approved in her name, and that the documents that were going to be prepared, filled in, were going to make her the sole obligor and the owner of this motor vehicle, which had a price of $91,000 and an installment payment of $1,200 and some odd a month, and she was earning $800 a month as a part-time school teacher. Now, those allegations of the complaint are admitted and not denied for purposes of this motion. Now, it's also alleged that two or three months later, this motor vehicle turned out to be a lemon. It was a yellow Hummer. It turned out to be a lemon. So now, GMAC and General Motors and Green evolved a plan after they had made two applications in Jennifer's name in March, again without her knowledge or permission, stealing her identity. They then, and those were rejected by GMAC, and they were rejected because the income was insufficient to take care of this obligation, and because the value of the motor vehicle was insufficient in relation to the amount of the loan. So knowing that this obligation could not be repaid by Jennifer, they evolved a substitution agreement. It was signed by General Motors and by GMAC and by Green, and this was substituting a red Hummer for the yellow Hummer. And this agreement was a reaffirmation of the original agreement. Now, that is alleged to be a predatory loan. It is alleged to be in violation of Illinois law, first, identity theft, and secondly, a loan that is made in circumstances where you know the person can't pay it. It's a predatory loan. Now, the defendants have moved outside of the parameters of the complaint, and they have made statements as to what Jennifer testified in her deposition, and we have put in all of these depositions in the file after the case was dismissed in order to have a complete record. And what she says is that she was at home feeding three children when this man Buzarski appeared, and she confirms that she asked why should she be signing for his car, and Buzarski knew, and he didn't say anything. He pointed out where she should sign, and she signed, and some of these documents, or all of them, we don't know, were not filled in. They were blank. And in the record, you can see some of the exhibits show today that they are signed, but they are in blank. So now, they never gave her an opportunity to read or to ascertain the truth of what she was signing or why she was signing. They had her sign these documents, and they never told her that, this is in her deposition, they never told her that they had applied for credit in her name, got a credit application approved in her name, and incidentally, that credit application of December the 9th was never produced in discovery. And GMAC testified that all of the applications is scanned into a computer, and when we asked for the copies of these applications, and there would have been four applications in her name, we got a barrage of objections, and that was never ruled on. Why would there be four applications in her name? Well, there was an application made on December the 8th in Mary Jennifer's name, and in the name of Margarita Importaya, which was the business. Okay, the combined one, and then one in her name only. Yeah, then they made one in her name the following day. And then the substitution? Yeah, using the same income that he had, and then in March, when they were working out this substitution agreement, they made an application to GMAC, and that was denied. And whose name was that in again, the substitution? That was in Mary Jennifer's name. Okay. In March. And then they made another one a week later, sent it in to GMAC's Decatur office, and that was refused also. So there are four applications floating around someplace in a computer. The only application that was ever produced in Discovery was one from Green Chevrolet, and that was dated December the 11th. So it couldn't have been the basis for the grant of credit on December the 9th. It's dated on a space two days later, and Jennifer testified that it was on December the 12th of Friday that she actually signed these documents. So the fact is that the applications were never produced except from Green. Now Green's credit manager admits that the Exhibit 17 that they finally produced was filled in by him. He filled out the amount of earnings. He filled out that she was the owner of a margarita import tile, which was not true. Now why Green has that application, which was never acted upon by GMAC, is a matter of speculation. Now the cases have this principle that runs throughout all of them. First of all, a concealment or a suppression of a material fact standing alone is enough to state a Consumer Fraud Act cause of action. That's that Con Act case that the Supreme Court decided and we decided in our brief. That's where Suzuki concealed the rollover characteristics of a samurai motor vehicle and the Supreme Court said that stated a cause of action for a consumer fraud. The Pella Corporation case is also illustrative of that principle. Pella concealed from consumers the fact that its clad windows were susceptible to dry rot and that stated a Consumer Fraud Act cause of action. The dealer cases, the automobile dealer cases are legion in which an agreement is signed, but it is signed to buy a motor vehicle, but it's signed under the concealed facts that in one case I think the car had been a salvage car. Another it had been extensively wrecked. Another one it was a rental car that had had the socks run off of it and they sold it as executive driven. So these cases all hold that the consumer has a cause of action where important facts are concealed. Now in our complaint we've alleged that she would not have signed anything if she had had the true facts told to her. We've also alleged in our complaint that as a proximate cause of this deception, concealment, and suppression she incurred damage. And her testimony shows that she did have damage. She tried to buy a motor vehicle herself. These parties were separated in April of 2004 and the divorce was filed I think in June of 2004. So when for example the defendants say she had the use of that motor vehicle for a full year, that's not true. And there's absolutely no evidence anywhere in the record to support contention such as that. Was her husband paying the installment payments up until the time? Yes. The testimony is that the payments were made by him from his business and when they evolved as substitution of the red for the yellow hammer, he had to pay and he did pay $3,460 or something like that difference in the price. And that check is in the record and it shows it was issued by his company. And he made all the payments up until sometime I think in 2005 when he just stopped making the payments and the car was repossessed. The case of South Holland Dodge also has to be mentioned in this case because that held the finance company when it is directly involved in the fraud can be held liable regardless of any federal truth in lending statute or whatever. So another case was the Honleki case, Honleki versus GMAC and the automobile dealer. And in that case, GMAC was held because it knew, well, first of all, the consumer wanted to try out the van and she took the van off the lot but they said she had to sign a receipt for it. So she drove it and came back and said, I don't like it. And the dealer said, well, you bought it because you signed a retail installment sales contract. GMAC knew of those circumstances and still tried to enforce collection of the contract. And the appellate court said, and we've cited that in our brief, the appellate court said, no, nothing doing. GMAC is as responsible for this direct fraud as the dealer. In conclusion, I think what we have is a situation in which the motion judge did not have before her all of the important information. She had 50 cases on the docket that morning and we had about five minutes to argue or present her case. And what was presented to her as facts were not the facts and she should have had the, so what we ask is that this case be reversed. If we go back and try this case and let the trier of fact make the determinations of the unlawful practices. Thank you. Thank you, Counsel. Counsel? May it please the members of the court. We are here, heard Mr. Stobbs' arguments today, and I think they need to focus on exactly what was presented to the court at the time and not all of the additional depositions and everything that was submitted to the court after hearing the motion. What we had presented to the court, trial court below, was a motion to dismiss. And it was pursuant to Rule 619. The primary allegations, though, were that admissions contained in the complaint, the Fourth Amendment complaint, that Ms. Margarita had signed basically the documents relating to this particular transaction. And under the law of the state of Missouri, I mean the state of Illinois, those, that basically, that signature, those executions, those documents basically clad ourselves out of court. We did make reference to, in that particular motion, the deposition of Ms. Margarita, which was the only extraneous thing we made mention to in that particular motion. We had not attached it to that particular motion because it was already presented to the court as part of a motion for summary judgment and as part of a motion to dismiss the Third Amendment complaint, which was granted by the trial court. It was replayed again. We basically submitted the exact same motion. We did not attach again for a third time a copy of the deposition. But the bottom line from our perspective today, Your Honors, is the fact that the plaintiff admits in her plea that she signed the documents associated with the purchase of this Hummer. It's a complaint in paragraph 15 through 17, and the complaint, that was in December of 2003. Secondly, she admits also that she signed the substitution agreement months later after that fact. So what we have here is that someone's trying to claim fraud on the grounds when they had the documents in front of them that would have basically revealed the alleged fraud if there any existed. Let's look at the allegations that she claims of fraud in the complaint that they present. The first one was basically making a loan in the amount of $68,000. Well, again, that's on the face of the contract that she signed. Secondly, she said she was an accommodating party or not being the sole obligor. Well, first, being the sole obligor is on the face of the contract. Well, I thought that there were three applications that weren't disclosed. Well, I'm not sure that one needed to be disclosed to her. And let me correct the statements concerning Mr. Stobbs about how GMAC operates on these things. Basically what happens is an application is scanned in and gets sent to GMAC. That particular format in which the dealership has it is not the way it shows up in GMAC's computers. It shows up with a printout showing specific factual information. Those documents were produced to Mr. Stobbs. So the documentary information as to the applications were. However, the prior applications, again, one, they were made applications by her husband. Again, this is now making her the obligor, not her husband the obligor. So, in other words, you're saying that the documents that Counsel Stobbs says were given to them were not. I mean, were not given to them, were given to them. So he has all of the documents that are on the computers at GMAC. Yes, all the documents. So there are no other documents any place. Not that we're. Not even in the hard drive. We have made search, diligent search for them, Your Honor. In fact, I think it would be fine if we could find the same thing that shows up at the dealership. But what shows up in GMAC's screens and basically explains this particular information and those documents have been produced. And all the documents were filled out in full before they were signed. Is that part of the record? That I do not know if is a part of it. So it might not be. She might have signed some blank documents. She may have signed some blank documents. But, again, it would be who first. And none of those documents are being relied on? Pardon? None of the blank documents are being relied on. Not to my knowledge. After they were completed. Not to my knowledge, Judge. We're relying on a retail installment contract that's fully completed. But he's alleging that apparently. Well, he's alleging that it was not completed. Yes. And I understand that. And, again, my position would be if someone's signing blank documents, there's no allegations, there's no representations or misrepresentations as to the terms that would be put into those documents alleged in the complaint. Maybe try to make myself more clear. Assuming that there were blanks. Yes. Basically, it was beholden on her to either inquire as to what was going to be put in there or to not sign the contract. So basically sign the contract at her own risk if there were blanks contained on it. So if those blanks were then filled in and that was determined to be fraudulent, the fact that they were filled in with fraudulent information, you're saying that that can't be brought under a Consumer Fraud Act because she signed the document. That takes care of everything. No, I'm not saying that, Your Honor, because there is actually a case in Illinois, and I can't recall exactly what it is, but I believe it's a case. What about the full case? However, what I'm saying is just a particular instance. If, for example, she was presented with a document with a blank and she said, what's going to be filled in there, or she was told previously, this is going to be filled in with this number or that number or something like that, then I would agree there's fraud. But that's not an instance of alleging. They're basically just saying there were some blanks contained in the document. It's interesting to note they're just saying in some of the documents. It never says in the complaint that there was a blank in the retail installment contract, which is the operative documented issue here. But if there had been a blank and it was filled in fraudulently later, you're saying because she signed that contract, she's out of court. Well, no, not if it's filled in fraudulently later. The distinction, I think, Judge, is this. If she was told that blank was going to be filled in with some particular number, But we're presuming that's not the case here. Right, yeah, we're presuming that's not the case here. Because there was no indication or allegation. She asked what was going to be put into the blank terms. She had represented what was going to be put into the blank terms or any of that. And if it's filled in fraudulently and she doesn't ask and signs it, she's out of court. No. When I'm saying filled in fraudulently, that's the distinction, Judge. Aren't they alleging that, though? Huh? Aren't they alleging that? No, they're not alleging it was filled in fraudulently, in my opinion. What they're merely saying is she signed the document as a blank. They don't allege that those blanks were filled in differently than she anticipated or any of that. All they're saying is that there were some blanks in the documents. And, again, the specific factual allegation as to the retail installment contract, which is the operative document, there is no allegation it was filled in. But then if you go back to the document, they're saying that what is in the document now is fraudulent. In other words, they switched the incomes, his income and his income to her income or something like that. Is that what they're saying? They're saying that prior to the institution of documents, they did what they're claiming. There was a switch on the income so that their income wasn't less than the amount of payment. Right. But now you're saying that never exists now. Yeah. That doesn't exist. You're saying if she had read the installment contract, she would have been aware that they had actually switched identities. Let's just assume that. Well, the retail installment contract only has her name on it and the title company on it. Those are the only two names on it. She is listed as the top of the board under the contract. And it has specifically the terms of the contract, including the amounts and all of those. Isn't that a predatory loan? She is willing to sign on the agreement. If she doesn't have income. And the title company, which her husband is the owner of, is the co-signer. No, wait, they were the co-signer? Yes, the title company was the co-signer. Except that Green already knew that they couldn't get credit through his title company. Well, that happens quite often, where somebody makes an application only under their own name, and you add a co-applicant, they get it under their second name. Maybe I'm not reading things correctly, but I thought she was the sole applicant. No, the title company is also named on the contract. On the area? The title company is also named on the contract. That the contract, okay. Well, we'll have the documents. The documents are attached to the deposition. But you said there are no other documents. The other side says they're looking for four documents. Well, they're looking for some credit applications, and that's the only one. And they don't exist? To my knowledge, they don't exist. What happened to them? Or were they never made? I'm not so sure that they were. My understanding, and I'd have to go back and look at the documents, there were two credit apps, one done by the husband, one done by the wife at Green Chevrolet. Those were produced, and then there was, like I said, some subsequent. And those applications say that she makes $800 a month. No, none of those applications. Make an application for credit, just don't put your, I don't know, I haven't seen it. You don't have to put your salary down? The application she said for credit that she submitted. The first one she made. The only one she made. Okay, she made one. The only one I remember. And what did she say her income was? $120,000 a year she signed. There was no other application where she said she made $800 and was rejected? No. So she gave information to who, Green or to GMAC, that she made $120,000 a year? Well, the credit application that was signed, I'm sorry, I had it turned here, was submitted to Green and then also then, like I said, electronically transmitted to GMAC. And at the bottom of the application, just a moment. That would be one of the earliest date ones? Pardon? That would be at the earliest date? 527. Okay. You can see it on page C, 527 for the record. And this application indicates that she makes $125,000 a year, and it's her signature on it. Okay. Now, Mr. Minton, you represent all these entities? Green and GMAC, yes. Okay. Didn't Green know that she didn't make $125,000 a year? That I do not know. Well, isn't that part of the allegation of fraud, that they knew that is a fact? That is part of the allegation, but I don't think there's any deposition testimony to that. They relied upon representations made by Ms. Margarita. Okay. Does it make any difference that you filed a 2619 rather than a 2615? It's our opinion it does not, Judge, because the primary two reasons. One, the primary basis we're relying upon is the admission contained in the complaint that she signed off on the contracts. We cited the Leon v. Maxey-Miller ramble case, which basically says that once you've signed those contracts, you're pretty much obligated to them if you did not bother to investigate behind them, especially when the allegations of fraud could be allegedly revealed on the face of the contract. What if, you know, the better you are at concealing things and deceiving people, then you get people to sign off on contracts, then the better defense you have it? Well, I understand that that's not the facts of this case, Judge. What their claim is concealed is the price of the vehicle and the amount of payments, which is on the face of the contract, whether she was an accommodating partner or maybe sold out of the board on the contract, which is contained on the face of the contract. And, again, those are the facts of the prior credit denials. Her issue is really the only damage that she would have suffered was whether it was a loan that she could not pay. But, again, she could have found that if she just thought it would be on the face of the contract. Again, I don't know what was and wasn't filled in, because I guess there's a dispute on that. But it seems to me that that would affect what she would or wouldn't understand. I understand that. But, again, there's no allegation or complaint specifically as to the retail installment contract. It just says some of the things that we want. It does not make any allegations specifically as to the retail installment contract, which is the operative document. And so our position, again, on the 619 aspect, the fact that we attached the deposition, which we think also provides additional proof, surely could not have been inconsistent with the allegations of the complaint, because it was only her deposition, not any third parties. So any sort of factual inconsistencies with the allegations, which I don't think exist, I think further establishes the fact that she basically signed documents that have legal effect and that she's just trying to avoid. No further questions from the Court? Thank you. Thank you. Counsel? Counsel? In almost every fraud case involving the Consumer Fraud Act, there is some sort of document that has been signed by the consumer. And the fact of the fraud, that is, the concealment or the suppression of facts, is what triggers the Consumer Fraud Act claim. And whether or not you sign something is not binding in the sense that fraud always vitiates the contract. That's, you know, from, I remember that from Torrance. I had that 50 years ago. Now, we've got some confusion that's been engendered here by counsel. He says that they gave me the information that was in the computer at GMAC. But Rotemeyer testifies that the application was scanned into a computer. Now, he says that the computer retains that scanned application for a period of time. He didn't know how long. So it should be the actual application rather than information that they've derived from it. Well, that's what I understood that he said. He said it was scanned into the computer. He says the dealer faxed a signed credit application to GMAC. The application was scanned into the computer. That's at Appendix 570. Now, they say that they've, you know, given us copies of documents. We had three court arters from the trial court, from Judge Stack, artering them to produce the originals of the documents so that we could look at the originals. They never did it. Were there sanctions, or what was the result of that? Well, we go to court, and Mr. Minton would agree that he was going to produce the documents, and then they just wouldn't do it. But was there ever a motion to strike? Well, that was our next step in the trial of this case. It was to, we had a pending motion to produce the documents from GMAC, and we were going to file another motion for sanctions to get Mr. Minton to produce the originals of all the documents so we could look at them. So at the time this was dismissed, there was a pending motion to produce? Yeah. On file? Yeah. But they've been very difficult in all of the discovery in this case. What they do is you file a request to produce, and they wait for 30 days, and then they file objections. Then that has to go on the motion docket, and that takes another 30 to 60 days to get that heard, and then the judge arters them to produce, and then they have some kind of, they don't do it. Okay. What we're saying in this case is that she was never given copies of anything that she signed, and that is in violation of the law. The dealer is required by law to give you a copy of the retail installment sales contract, and they didn't do that. And the reason they didn't do it, we have alleged, is that this was part of the plot or plan to keep from her the knowledge of what she had signed and what her obligation was. There were four applications, one on December the 8th made in the name of Mary Jennifer Margarita and Margarita M. Portile without her knowledge or permission, one made on December the 9th in her sole name without her knowledge or permission, one which was apparently made, as I recall, on March the 23rd of 2004, and another one that was made on March the 30th of 2004, all of them without her knowledge or permission. I don't hear counsel ever trying to explain the fact that they stole her identity, and that is a criminal offense, a Class I felony. The fact that we have alleged that... Okay. Well, we're going to leave that in your good hands. Thank you, counsel. We appreciate the briefs and arguments of all counsel, and we will take this case under advisement.